UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE VIOLIN MEMORY, INC. SECURITIES LITIGATION** | Case No. 13-cv-05486-YGR<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS** |

Now before the Court are the second motions to dismiss filed by Defendants Violin Memory, Donald Basile, Dixon Doll, Cory Sindelar, Howard Bain III, Larry Lang, Jeff Newman, Mark Rosenblatt, David Walrod, (together, "Violin Memory Defendants") and J.P. Morgan, Deutsche Bank Securities Inc., Merrill Lynch, Barclays Capital Inc., Robert Baird and Co., Pacific Crest Securities LLC, and EM Securities LLC (together "Underwriter Defendants"). (Dkt. Nos. 92, 95.) Plaintiffs have opposed (Dkt. No. 100), and defendants have each replied (Dkt. Nos. 101, 102).

For the reasons set forth below, the Court **GRANTS IN PART** the motions, consistent with its prior order. With respect to the Section 12(a)(2) claims asserted against the Underwriter Defendants, the Court finds that plaintiffs have alleged sufficient facts to support their claim for a putative class and its connection to the Underwriter Defendants. Defendants have failed to substantiate their argument that the Court should effectively ignore those class allegations and require the identification of multiple plaintiffs each with a direct connection to each defendant.

Finally, with respect to the Section 11 claim stemming from Donald Basile's prior employment history, the Court finds that plaintiffs need not allege loss causation at this juncture and the complaint satisfies the Rule 8 pleading requirements.

**PROCEDURAL BACKGROUND**

The facts relevant to the case are set forth in detail in the Court's initial order on defendants' first motions to dismiss and are incorporated herein by reference. (Dkt. No. 87.) For purposes of the instant motion, the Court provides the following further salient facts.

The Court's prior order dismissed the majority of plaintiffs' theories underpinning their Section 11 claim. Certain of these dismissals were based on the Court's in-depth review of the Registration Statement documents and the nature of the representations therein, as compared to the statements plaintiffs had identified as allegedly misleading. In short, the Court found that with respect to those theories, the statements with which plaintiffs took issue could not have been materially misleading as a matter of law because the nature of express, specific disclosures contained in the Registration Statement documents, which were related in substance to the allegedly misleading statements plaintiffs identified, provided investors overwhelming information concerning the uniquely high degree of risk attendant in this particular offering, and rendered the statements either not misleading or immaterial to a reasonable investor.[1] Thus, the Court determined that plaintiffs' theories were not plausible bases for their Section 11 claim.

As to the remaining theories underlying their Section 11 claim, however, the Court found that plaintiffs had stated a claim. Specifically, the Court found that plaintiffs had stated a claim under Section 11 on their theories that defendants had failed (i) to disclose a material negative trend in their government sales, as required under Item 303 of Regulation S-K, and (ii) the nature of Mr. Basile's for-cause termination from a competitor company, while nonetheless touting other, more positive employment experience. However, the Court was unable to discern that information relating to Mr. Basile's prior employment was sufficiently linked to the losses for which plaintiffs sought relief, even drawing all inferences in plaintiffs' favor. Although in the ordinary course, loss causation is not an element of a Section 11 claim, here the Court could find no basis to render plausible any linkage between the plaintiffs' claims concerning Mr. Basile's former employment

---

[1] Specifically, the Court dismissed on this basis plaintiffs' Section 11 claim based on statements about PCIe Cards, the Company's work with Toshiba, the 6000 Flash Arrays, and alleged GAAP violations. (Dkt. No. 87 at 32.)

2

1  history, and the loss the incurred.  For that reason, the Court permitted plaintiffs leave to amend in
2  order to offer an allegation sufficient to "support an inference that [defendants'] misstatements and
3  omissions [concerning Mr. Basile's employment history] concealed the circumstances that bear
4  upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of
5  that loss absent the fraud.'"  (*See* Order at 29 (citing *In re Charles Schwab Corp. Sec. Litig.*, 257
6  F.R.D. at 547 (citing *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 568 F. Supp. 2d 349,
7  359 (D. Md. 2008) (citations omitted)).)

8  To the extent plaintiffs' Section 15 claim was based on the theories identified above, so,
9  too, was it dismissed.  Separately, the Court dismissed plaintiffs' Section 12(a)(2) claim against
10 the Underwriter Defendants because the Consolidated Amended Complaint ("CAC") failed to
11 allege facts sufficient to show that the Underwriter Defendants constituted "sellers," but provided
12 plaintiffs leave to amend this claim.

13 In addition, with respect to claims concerning unusual transactions between Mr. Basile and
14 the Underwriter Defendants, the Court determined that these allegations sounded in fraud and that
15 the CAC did not provide sufficient factual allegations under Federal Rule of Civil Procedure 9(b).
16 Such allegations were thus "stripped" from the claim.  Thus, in the end, the CAC was found to
17 have stated a claim as to one theory for Section 11 liability:  whether defendants had failed to
18 disclose a material negative trend in violation of Item 303.  The Court dismissed the remaining
19 claims, but did not do so with prejudice.

20 On November 21, 2014, plaintiffs filed their Amended Consolidated Class Action
21 Complaint.  (Dkt. No. 90 ("AC").)  However, plaintiffs declined to amend the previously
22 dismissed theories underpinning their Section 11 claim.  Instead, plaintiffs expressly decided to
23 amend *only* their Section 12(a)(2) claim against the Underwriter Defendants.  All other allegations
24 remain unaltered.

25 **LEGAL STANDARD**

26 A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in
27 the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  "Dismissal can be
28 based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

3

cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). That requirement is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### I. Dismissal of Previously Dismissed Theories

As stated above, no party disputes that much of the AC remains unchanged, although in its prior Order, the Court dismissed many of plaintiffs' Section 11 liability theories. In the instant motions, defendants argue that the Court should dismiss the theories previously dismissed, this time with prejudice, because plaintiffs have already failed to cure the deficiencies previously identified by the Court. Defendants argue that further amendment would be both futile and prejudicial to the defendants. Plaintiffs contend that they seek to have their claims preserved for appeal and have therefore left these claims in without making any changes. Notably, plaintiffs do not claim that the deficiencies in their claims could be remedied by amendment and concede that as they are currently presented, the Court's previous reasons for dismissal remain in effect.

As stated above, the Court did not dismiss these claims with prejudice previously. However, in light of the current procedural posture, the Court finds that plaintiffs' refusal to amend is effectively a concession that no amendment is possible, and therefore dismisses these claims now with prejudice.[2]

---

[2] Insofar as plaintiffs' Section 11 theories are dismissed, they are also dismissed insofar as they support plaintiffs' Section 12 claim against the Underwriter Defendants.

**II. Plaintiffs' Section 12(a)(2) Claim**

Underwriter Defendants contend that the AC fails to allege that six of the seven Underwriters constitute "sellers" such that they can be liable under Section 12(a)(2).

Section 12(a)(2) claims may be asserted only against a defendant who "offers or sells a security." The Supreme Court has ruled that the phrase "offers or sells" includes not only traditional sellers—individuals who pass title to another—but also certain individuals who engage in the solicitation of sales:

> The person who gratuitously urges another to make a particular investment decision is not, in any meaningful sense, requesting value in exchange for his suggestion or seeking the value the titleholder will obtain in exchange for the ultimate sale .... [L]iability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.

*Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Thus, under *Pinter*, both direct sellers and those who engage in the active solicitation of an offer to buy can be "sellers" for purposes of section 12. *See Pinter*, 489 U.S. at 646–47. The Ninth Circuit further clarified that with respect to the latter category, a "plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005).

The question presented is whether plaintiffs' allegations, construed in their favor, suffice to render the underwriter defendants statutory "sellers."[3] Plaintiffs argue that the standard has been met, relying on allegations concerning the Registration Statement's characterization of the roles of all underwriters relative to the IPO, and the nature of the sales activity undertaken by JP Morgan, the lead underwriter, with respect to Plaintiff Richards. Such allegations, taken together,

---

[3] Defendants do not seek to dismiss plaintiffs' Section 12(a)(2) claim as to JP Morgan. The motion to dismiss seeks to exclude only the remaining underwriter defendants.

5

1 suggest that the other underwriters acted as JP Morgan did and support plaintiffs' allegation that
2 these underwriters transferred title to members of the class.
3       The underwriter defendants argue that because plaintiffs have not identified with
4 particularity any specific plaintiff to whom the other (non-JP Morgan) underwriters transferred
5 title or solicited for purposes of selling Violin Memory stock, the plaintiffs have not met the
6 pleading standard and lack standing to assert this claim.
7       At this juncture, the Court finds that plaintiffs have satisfied the pleading standard under
8 Rule 8. In order to ultimately prevail on a Section 12 claim, a plaintiff must establish, among
9 other things, that the plaintiff bought from or was solicited by a specified statutory seller.
10 Although the elements of proof for the claim are straightforward, as the Third Circuit noted in *In
11 re Westinghouse Sec. Litig.*, "*Pinter* does not address what allegations are necessary to plead that a
12 defendant is a seller within the meaning of the statute." 90 F.3d 696, 718 (3d Cir. 1996). Under
13 the Rule 8 pleading standard, the Third Circuit determined that "plaintiffs must provide a short
14 and plain statement showing that the underwriter defendants are statutory sellers and that plaintiffs
15 purchased securities from them." *Id*. The Court finds this standard has been met here.
16       First, construed in a light favorable to plaintiffs, the AC alleges that the underwriter
17 defendants directly sold VM stock to putative class members. The terms of the agreement
18 between the underwriters and Violin Memory, as alleged, provide factual support for plaintiffs'
19 allegation that the underwriters were to transfer title to purchasers, of whom the putative class is
20 comprised. Furthermore, the particulars alleged with respect to JP Morgan's actions in connection
21 with the IPO provide support for the plausibility of plaintiffs' allegation that other underwriter
22 defendants sold Violin Memory stock in a similar fashion.
23       Allegations similar to these were found sufficient for purposes of pleading a Section
24 12(a)(2) claim in *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490
25 (W.D. Wash. 2009). There, the Court found adequate plaintiffs' allegation that "the Underwriter
26 Defendants, through public offerings, solicited and sold WaMu securities to members of the
27 Class." *Id*. at 508. The court further noted that plaintiffs need not allege "which underwriter sold
28 securities to each plaintiff" to state a Section 12(a)(2) claim under Rule 8. *Id.* (citing *In re DDi*

1  *Corp. Sec. Litig.,* CV 03–7063 NM, 2005 WL 3090882, at *20 (C.D. Cal. July 21, 2005)). This
2  Court agrees in light of the other allegations in the CAC. Accordingly, plaintiffs have stated a
3  claim for relief as to the remaining underwriter defendants.

4  Second, insofar as defendants' argument is related to standing issues, the Court finds
5  persuasive the reasoning of the Third Circuit that such questions are better addressed during class
6  certification. *See In re Westinghouse,* 90 F.3d at 718 n. 22 (rejecting notion that in order to
7  establish standing "there must be a representative plaintiff who alleges sale or solicitation by each
8  proposed defendant"; stating that although such concerns "might be relevant on a motion for class
9  certification, they do not address whether, as a threshold matter, plaintiffs properly stated a section
10 12(2) claim under Rule 12(b)(6)."); *see also In re DDi Corp. Sec. Litig.,* 2005 WL 3090882, at
11 *20 n.18. At that juncture, plaintiffs will bear the burden of establishing that the members of the
12 class share a sufficiently similar injury, for which the named plaintiffs may be adequate
13 representatives. In light of the allegations in the AC (concerning the roles of the underwriters in
14 connection with the IPO, stating that they sold securities in connection therewith, and the specific
15 allegations relative to how J.P. Morgan acted), at this early pleading stage the Court finds that
16 plaintiffs have sufficiently stated their claim.

17 Construing all allegations in the light most favorable to plaintiffs, the Court finds that at
18 this juncture, plaintiffs have provided sufficient factual allegations to permit their Section 12(a)(2)
19 claim to move forward. The underwriter defendants' motion to dismiss on this basis is **DENIED**.

20 **III.  Allegations Relating to Donald Basile's Former Employment**

21 As the Court acknowledged in its prior order, loss causation is not an element of plaintiffs'
22 prima facie Section 11 claim. Rather, defendants may assert lack of loss causation as an
23 affirmative defense.

24 Deriving from the common-law doctrine of proximate cause, loss causation is "a causal
25 connection between the material misrepresentation and the loss." *Dura Pharmaceuticals, Inc. v.*
26 *Broudo*, 544 U.S. 336, 342 (2005); *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d
27 171, 183 (2d Cir. 2007) ("*Dura* culls from the common law the black letter law that a fraud
28 plaintiff must show that he acted on the basis of the fraud and suffered pecuniary loss as a result of

7

so acting.") (citation omitted). The Ninth Circuit has further clarified that "[a] plaintiff is not required to show that a misrepresentation was the sole reason for the investment's decline in value in order to establish loss causation." *In re Daou Systems*, 411 F.3d at 1025 (citations omitted). However, it is insufficient "for an investor to allege only that it would not have invested but for the fraud. Such an assertion alleges transaction causation, but it does not allege loss causation." *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 547 (N.D. Cal. 2009) (citing *Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991, 995 (7th Cir. 2007)). Rather, loss causation can be established, for example, where a plaintiff proves that "it was the very facts about which the defendant lied which caused its injuries." *Id.* (citing *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997)). In that instance, the loss is caused because "the failure to disclose th[e] fact caused [the] injury through [the plaintiff's] undervaluation of the risk it was undertaking in accepting the [investment]." *Id.* (citing *Caremark*, 113 F.3d at 648).

Although in its prior order the Court found to the contrary, having now had the benefit of further briefing on this issue, the Court finds that plaintiffs satisfy Rule 8's pleading requirements and need not specifically allege loss causation. The Court finds it plausible that plaintiffs may be able to establish losses linked causally to the omitted information concerning Mr. Basile' employment history. The Court takes no position on the ultimate viability of such arguments, and notes only that it is not apparent on the face of the AC the plaintiffs could not establish losses linked to the omitted information. Plaintiffs' Section 11 claim on this theory is permitted to move forward.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** defendants' motions to dismiss. For purposes of clarity, no later than 7 days from the issuance of this Order, plaintiffs are directed to file on the docket a new amended complaint in conformity with the rulings announced herein. Defendants shall respond within 14 days thereafter.

The Court **SETS** a case management conference for **June 22, 2015** at 2:00 p.m. in Courtroom 1 of the United States District Court at 1301 Clay Street, Oakland California.

This order terminates Docket Numbers 92 and 95.

**IT IS SO ORDERED.**

Dated:  April 30, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**