Nicholas I. Porritt (admitted *pro hac vice*)
Adam M. Apton (admitted *pro hac vice*)
LEVI & KORSINSKY LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
nporritt@zlk.com
aapton@zlk.com

*Attorneys for Lead Plaintiffs Ali Shehk
and Alan Richards, and the Settlement
Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE VIOLIN MEMORY INC. SECURITIES LITIGATION | Master Docket No. 13-CV-05486-YGR |
| | **CLASS ACTION** |
| | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | DATE:    July 26, 2016 |
| | TIME:    2:00 p.m. |
| | CTRM:    1, 4th Floor |
| | JUDGE:    Hon. Yvonne Gonzalez Rogers |

**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION**

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on March 16, 2016

("Preliminary Approval Order"), on July 26, 2016 at 2:00 p.m., or as soon thereafter as counsel may be

heard, at the United States Court, Northern District of California, Oakland Courthouse, 1301 Clay

Street, Courtroom 1 – 4th Floor, Oakland, California 94612, before the Honorable Yvonne Gonzalez

Rogers, Lead Plaintiffs Ali Shehk and Alan Richards ("Plaintiffs")[1] will move pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence, for an order granting final approval of the proposed settlement (the "Settlement") and approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation"), as set forth in the Stipulation, between Plaintiffs and Defendants. Defendants have reviewed this Notice of Motion, Motion, and the accompanying Memorandum of Points and Authorities in Support thereof and have indicated that they do not intend to oppose this Motion.

This motion is supported by the accompanying Memorandum of Points and Authorities in Support; the Declaration of Nicholas I. Porritt in Support of Plaintiffs' Motion for Final Approval of the Settlement and Approval of the Plan of Allocation, and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, dated June 21, 2016 (the "Porritt Decl."), and the exhibits filed therewith; the Affidavit of Melissa Baldwin Regarding (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and the (C) Report on Requests for Exclusion Received to Date (the "Baldwin Decl."), and the exhibits filed therewith; and the Stipulation and the exhibits filed therewith (ECF No. 154.); and all other pleadings and papers filed in this action.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement of the Litigation on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate to the Settlement Class and should be approved by the Court;

2. Whether the Plan of Allocation is fair, reasonable, and adequate;

3. Whether the Notice satisfied due process and the complied with Fed. R. Civ. P. 23(e);

4. Whether a Judgment should be entered herein; and

5. To rule upon such other matters as the Court may deem appropriate.

---

[1]   Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement, dated as of January 29, 2016 (the "Stipulation") (ECF No. 154).

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 6

      I. STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS ....................... 6

    II.     THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR
           APPROVAL ................................................................................................. 8

           A.     The Parties Were Able To Assess The Strengths And Weaknesses Of
                   Their Cases ................................................................................................. 8

           B.     The Settlement Appropriately Balances The Risks Of Litigation And The
                   Benefit To The Class Of A Certain Recovery ............................................. 9

           C.     The Settlement Amount Supports Approval Of The Settlement .................... 14

           D.     The Recommendation Of Experienced Counsel Heavily Favors Approval
                   Of The Settlement ....................................................................................... 16

           E.     Reaction Of The Class Supports Approval Of The Settlement ..................... 16

    III.    THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND SHOULD
           BE APPROVED BY THE COURT ........................................................... 17

    IV.    THE COURT HAS ALREADY CERTIFIED THE SETTLEMENT CLASS
           UNDER FED. R. CIV. P. 23 ....................................................................... 18

           A.     The Class Is Sufficiently Numerous ........................................................... 19

           B.     Common Questions Of Law Or Fact Exist ................................................... 19

           C.     Plaintiffs' Claims Are Typical Of Those Of The Class ............................... 20

           D.     Plaintiffs Are Adequate Representatives Of The Class ............................... 20

           E.     The Requirements Of Rule 23(b)(3) Are Also Satisfied ............................. 21

    V.    THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS ............. 22

CONCLUSION ................................................................................................................ 23

i

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
No. 10-0059, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012) ........................ 16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 625 (1997) ................................................................................................20, 21

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610, 622 (N.D. Cal. 1979) ..........................................................................8, 9

*Class Plaintiffs v. Seattle*,
955 F.2d 1268, 1284 (9th Cir. 1992) ....................................................................................17

*Daubert v. Merrell Dow Pharms. Inc.*,
509 U.S. 579 (1993) ..............................................................................................................11

*DeJulius v. New England Health Care Employees Pension Fund*,
429 F.3d 935, 945-47 (10th Cir. 2005) ................................................................................22

*Destefano v. Zynga, Inc.*,
No. 12-CV-04007-JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ...................... 15

*Detroit v. Grinnell Corp.*,
495 F.2d 448, 455 n.2 (2d Cir. 1974) ..................................................................................15

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ..........................................17

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156, 173 (1974) ......................................................................................................22

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970, 984 (9th Cir. 2011) ........................................................................................20

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15, 19 (N.D. Cal. 1980) ......................................................................................14

*Girsh v. Jepson*,
521 F.2d 153, 157 (3d Cir. 1975) ....................................................................................9, 13

*Glass v. UBS Fin. Servs.*,
No. 06-4068, 2007 U.S. Dist. LEXIS 8476, at *11-*12 (N.D. Cal. Jan. 26, 2007) ...............10, 11

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203, 1206 (6th Cir. 1992) ....................................................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1026 (9th Cir. 1998) ................................................................7, 19, 20, 21

*Hicks v. Morgan Stanley & Co.*,
No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) ........................15

ii

*Hughes v. Microsoft Corp.*,
   No. 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21, 2001) ...................... 8

*In re Apple Computer Sec. Litig.*,
   No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991)..................................... 11

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   No. 01-cv-0649 (KAJB), 2003 WL 25419526 (S.D. Cal. July 15, 2003)................................... 19

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   603 F.2d 1353, 1361-62 (9th Cir. 1979)...................................................................................... 22

*In re Heritage Bond Litig.*,
   No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *11-*12 (C.D. Cal. June 10, 2005) ............passim

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ........................................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454, 458 (9th Cir. 2000) ...................................................................................7, 8, 9, 18

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998)...................... 12

*In re Novatel Wireless Secs. Litig.*,
   No. 08cv1689, 2013 U.S. Dist. LEXIS 16986, *7-*8 (S.D. Cal. Feb. 7, 2013)............................ 11

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008)...................................................................6, 13, 17

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373, 378(9th Cir. 1995) .................................................................................................. 8

*In re Qwest Commc'ns. Sec. Litig.*,
   No. 01-01451, 2006 U.S. Dist. LEXIS 71039, at *19 (D. Colo. Sept. 28, 2006) ........................ 12

*In re Skilled Healthcare Group, Inc.*,
   No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011)...................... 16, 18

*In re Synthroid Mktg. Litig*,
   264 F.3d 712, 716 (7th Cir. 2001) .............................................................................................. 15

*In re THQ Inc. Sec. Litig.*,
   No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *9-*10 (C.D. Cal. Mar. 22, 2002) ................. 19, 21

*In re Union Carbide Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ................................................................................. 15

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*,
   122 F.R.D. 251, 256 (C.D. Cal. 1988)........................................................................................ 21

*In re Velti PLC Sec., Litig.*,
   No. 13-CV-03889-WHO, 2015 U.S. Dist. LEXIS 135004 (N.D. Cal. Oct. 1, 2015) ................... 17

iii

*In re Warner Commc'ns Sec. Litigation*,
   618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ..................................................... 11, 14, 16

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *7 (N.D. Cal. Feb. 2, 2009) ............................. 7

*Lewis v. Newman*,
   59 F.R.D. 525, 528 (S.D.N.Y. 1973) ......................................................................... 9

*Linney v. Ala. Cellular P'ship*,
   No. 96-3008, 1997 U.S. Dist. LEXIS 243000, at *16 (N.D. Cal. July 18, 1997) ......................... 7

*Lundell v. Dell, Inc.*,
   No. 05-3970, 2006 U.S. Dist. LEXIS 90990, at *9 (N.D. Cal. Dec. 4, 2006) ........................... 8, 9

*Maher v. Zapata Corp.*,
   714 F.2d 436, 451 (5th Cir. 1983) ........................................................................ 22

*Mendoza v. United States*,
   623 F.2d 1338, 1351-52 (9th Cir. 1980) .................................................................. 22

*Milstein v. Huck*,
   600 F. Supp. 254, 267 (E.D.N.Y. 1984) ................................................................... 13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306, 314 (1950) ................................................................................. 22

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523, 528 (C.D. Cal. 2004) ............................................................... passim

*Newman v. Stein*,
   464 F.2d 689, 693 (2d Cir. 1972) .......................................................................... 8

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615, 624 (9th Cir. 1982) .................................................................. passim

*Petrovic v. AMOCO Oil Co.*,
   200 F.3d 1140, 1152 (8th Cir. 1999) ...................................................................... 18

*Republic Nat'l Life Ins. Co. v. Beasley*,
   73 F.R.D. 658 (S.D.N.Y. 1977) ............................................................................. 9

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441, 1449 (11th Cir. 1997) .................................................................... 11

*Rodriguez v. Hayes*,
   591 F.3d 1105, 1122 (9th Cir. 2010) ..................................................................... 19

*S.C. Nat'l Bank v. Stone*,
   749 F. Supp. 1419, 1437 (D.S.C. 1990) ................................................................... 18

*Staton v. Boeing Co.*,
   327 F.3d 938, 959 (9th Cir. 2003) ......................................................................... 7

iv

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370, 1375 (9th Cir. 1993) ............................................................... 7

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943, 950 (9th Cir. 1976) ............................................................... 7

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ....................... 15

**Statutes**

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 19

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 19

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................................... 21

Rule 23(b)(3) ............................................................................................................ 21

Rule 23(e)(1)(B) ....................................................................................................... 22

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## PRELIMINARY STATEMENT

3
4
5
6
7
8
9
10
11
12
13
14

Pursuant to the Preliminary Approval Order, this Court certified a class consisting of all those who purchased or otherwise acquired Violin Memory, Inc. ("Violin" or the "Company") securities: (i) in Violin's initial public offering on September 27, 2013; and/or (ii) on the public market between September 27, 2013 and November 21, 2013, inclusive, and who were damaged thereby (*i.e.*, the "Class" and "Class Period").  The Settlement provides for payment by the Defendants to the Class of $7,500,000 plus interest (the "Settlement Fund").  As described in greater detail below, RG/2 Claims Administration LLC (the "Claims Administrator") has published notice and disseminated 9,655 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release ("Proof of Claim"), (together, the Notice and Proof of Claim are referred to herein as the "Notice Packet").  Baldwin Decl. at ¶7. As of June 20, 2016, neither counsel nor the Claims Administrator have received any objection to the terms of the Settlement or proposed Plan of Allocation.

15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiffs submit that the Settlement of the Action on these terms represents an excellent result for the Class, and Plaintiffs and Counsel for the Settlement Class ("Plaintiffs' Counsel") are pleased to present the Settlement to the Court for final approval.  Plaintiffs' Counsel were able to obtain this result only after a thorough, but expeditious investigation of the facts and circumstances underlying Plaintiffs' claims including analysis of public documents; interviews and examinations of confidential witnesses; consultation with a damages expert; the preparation and filing of the thoroughly researched and detailed Second Amended Consolidated Class Action Complaint (the "Complaint"), as well as two mediation sessions, which included significant briefing, and the review of over 16,000 pages of discovery.  Given the assessment of Plaintiffs' Counsel, after conducting their extensive factual and legal analysis of the relative strengths and weaknesses of the claims asserted in the Action against the Defendants and the large recovery of cash obtained for the Class without the delay usually experienced by Class members in securities class actions, Plaintiffs believe the Settlement is a superb result. Prolonged litigation would have resulted in substantial reduction of available insurance proceeds, the

28

only practical source of any recovery for the Class, through the payment of defense costs, with no guarantee of any increased recovery.

Based on the amount obtained in Settlement versus the risk of obtaining a smaller or different judgment at trial, the certainty of a recovery versus the risks of no recovery at trial, Plaintiffs' Counsel's extensive experience in other class actions, the serious disputes between the parties concerning damages and liability, and the favorable reaction of the Class, Plaintiffs' Counsel firmly believe that this Settlement is fair, adequate, and reasonable, and recommend that the Settlement be approved by this Court.

## STATEMENT OF FACTS

### Plaintiffs' Claims and Allegations

The Action arises out of misrepresentations and omissions Defendants disseminated about Violin's sales to the federal government and the professional background of the Company's former chief executive officer, Donald G. Basile.  Specifically, the Complaint alleges that Defendants failed to disclose that Violin's sales to the federal government had been declining and/or were likely to be negatively impacted due to federal budget constraints. Further, the Complaint alleges that Defendants failed to disclose that Mr. Basile was terminated for-cause from his prior employer, Fusion-io, Inc. When this information became public, the Complaint alleges that the share price fell and shareholders were damaged.

The lawsuit seeks money damages against Defendants for alleged violations of the federal securities laws. Defendants have denied and continue to deny each and all of the claims and contentions alleged by the Lead Plaintiffs in the Litigation. Defendants continue to assert that they did not violate Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, that they did not engage in any conduct that could give rise to any liability to Lead Plaintiffs or the Settlement Class, that none of the claimed statements of omissions caused damages to Plaintiffs or the Settlement Class, and that none of the claimed misstatements or omissions were material.

**Procedural History and Lead Counsel's Investigation**

On November 26, 2013, a class action complaint, styled *Yun-Chung Tsai v. Violin Memory Inc., et al.*, 4:13-cv-05486-YGR, was filed against Defendants for claims under Sections 11 and 15 of the Securities Act of 1933.  On November 27, 2013, a substantially similar related action was filed with this Court entitled, *Richard L. Schneider v. Violin Memory Inc. et al.*, 3:13-cv-013-cv-05515-CW, asserting both claims under the Securities Act and claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934. Thereafter two additional related cases were filed: December 4, 2013, *Andrew McBrian v. Violin Memory, Inc. et al.*, 13-cv-05610-PJH; and December 17, 2013, *Alan Richards v. Violin Memory, Inc. et al.*, 13-cv-05834-YGR, alleging Securities Act claims under Sections 11, 12(a)(2) and 15. On February 13, 2014, the Court issued an Order consolidating these cases into the above-captioned master docket. (ECF No. 53.) On February 26, 2014, the Court appointed movants Ali Shehk and Alan Richards as Lead Plaintiffs and their counsel to serve as Lead and Liaison Counsel for the alleged class. (ECF No. 57.)

Lead Plaintiffs filed the Consolidated Class Action Complaint (ECF No. 58) on March 28, 2014 (the "Consolidated Complaint"). The Consolidated Complaint alleged that the Company's Registration Statement contained materially untrue statements at the time it became effective. The alleged untrue statements related to: certain negative trends that were materially impacting the Company's sales to government-related customers; the quality of the Company's flash array devices and memory cards; the management and professional background of the Company's then-current Chief Executive Officer, Donald G. Basile; and the Company's disclosure of non-cancelable order commitments. The Consolidated Complaint alleged claims under Sections 11, 12, and 15 of the Securities Act of 1933.

Defendants moved to dismiss the Consolidated Complaint pursuant to Rule 12(b)(6) on April 18, 2014. On October 31, 2014, the Court issued an Order granting in part and denying in part Defendants' motions to dismiss (ECF No. 87.) Pursuant to the Order, the Court allowed Lead Plaintiffs' claims to survive based on omissions concerning negative trends and events or uncertainties impacting the Company's sales to government-related customers.

3

On November 21, 2014, Plaintiffs filed the Amended Consolidated Class Action Complaint (the "Amended Complaint"). (ECF No. 90.) The Amended Complaint asserted additional allegations concerning Plaintiffs' standing to pursue claims under Section 12(a)(2) of the Securities Act of 1933 as well as allegations pertaining to loss causation. The Amended Complaint alleged claims under Sections 11, 12, and 15 of the Securities Act of 1933. Defendants moved to dismiss the Amended Consolidated Complaint.  (ECF Nos. 92, 95.)

On April 30, 2015, the Court granted in part and denied in part Defendants' motions to dismiss the Amended Consolidated Complaint. (ECF No. 107.) Pursuant to the Court's Order dated April 30, 2015, the Court allowed Lead Plaintiffs to proceed against all Defendants with regard to two alleged omissions: (1) allegations concerning negative trends impacting sales to government-related customers and (2) allegations concerning Donald Basile's former employment. The Court also ordered Plaintiffs to file a new complaint omitting allegations pertaining to claims that had been dismissed with prejudice.

Plaintiffs filed the Second Amended Complaint on May 6, 2015 (the "Second Amended Complaint"). (ECF No. 108.) The Second Amended Complaint alleged claims under Sections 11, 12, and 15 of the Securities Act of 1933. The Defendants answered the Second Amended Complaint on May 20, 2015 (ECF No. 109) and May 21, 2015 (ECF No. 110).

Plaintiffs served extensive document requests and interrogatories to Defendants on June 11, 2015 and Defendants responded on July 13, 2015.  Plaintiffs reviewed and analyzed over 16,000 pages of discovery documents received from Defendants.

On June 22, 2015, the parties appeared before the Court for a scheduling conference.  The Court set a schedule which, in pertinent part, required all discovery to be completed on or before May 6, 2016 and trial to be held on November 29, 2016. The scheduling order also required the parties to attend a private mediation session with Judge Phillips on or before September 4, 2015.  (ECF No. 122.) The first day on which all parties and Judge Phillips were available for the additional mediation session was September 17, 2015. The parties consequently modified the scheduling order to reflect the tentative mediation date. (ECF No. 127.)

On September 22, 2015, Plaintiffs filed a motion for class certification.  On October 1, 2015, Lead Plaintiff Ali Shehk sat for a deposition and on October 6, 2015 Lead Plaintiff Alan Richards sat for a deposition.  Defendants filed their opposition to the motion for class certification on October 13, 2015.  Plaintiffs replied in support of the motion on October 29, 2015.

On March 19, 2015, the parties participated in a mediation session with the Honorable Layn R. Phillips (ret.). The mediation was unsuccessful, but resulted in an agreement whereby the Defendants agreed to produce a preliminary set of internal documents on an expedited basis. The Defendants subsequently produced approximately 16,000 pages of documents. Lead Plaintiffs reviewed the materials provided by Defendants. Lead Plaintiffs and Defendants engaged in several arm's length negotiations over the implications of the materials produced by the Defendants.

**Settlement Negotiations**

On September 17, 2015, the parties participated in a second mediation session with Judge Phillips. While the September 17, 2015 mediation was not immediately successful, it prompted additional arm's length negotiations between the parties which ultimately resulted in a mediator's recommendation. The parties accepted the mediator's recommendation and the Settlement was reached on November 3, 2015.

After reaching an agreement in principle regarding the relief to the Settlement Class, the parties began preparing the settlement documents, including the stipulation of settlement, the class notice, the summary notice, the claim form, and the proposed orders granting final approval and entering final judgment.  Over the next several weeks, the parties exchanged drafts of the settlement documents.  The parties finalized and executed the Stipulation of Settlement on January 29, 2016.

**Preliminary Approval and Notice**

On March 16, 2016, the Court entered the Preliminary Approval Order.  (ECF No. 162.)  The Preliminary Approval Order, among other things: (i) approved the Stipulation and the Settlement set forth therein and preliminarily certified the Class; (ii) set the final approval hearing for July 26, 2016; (iii) and set the deadlines for objections to the Settlement, requests for exclusion from the Class, and

the filing of papers in support of the Settlement, the Plan of Allocation, and any application for attorneys' fees and reimbursement of expenses.

Furthermore, the Preliminary Approval Order instructed Lead Counsel to disseminate the Notice Packet.  The Claims Administrator, on behalf of Lead Counsel, mailed the Notice Packet to 9,655 potential Class members as of June 20, 2016.  Baldwin Decl. at ¶7.  Furthermore, since April 7, 2016, the Claims Administrator has been operating a website and Toll Free Phone Service ("TFPS") dedicated to fielding calls and questions from Violin shareholders.  *Id*. at ¶10.   The website (www.rg2claims.com/violinmemory) provides potential Class members with the pertinent deadlines of the settlement proceeding (*i.e.*, deadlines to request exclusion, object, and submit claims) as well as all pertinent settlement documents (*i.e.*, the Preliminary Approval Order, Notice Packet, and Summary Notice).  *Id*. at ¶9.  Also on April 7, 2016, the Claims Administrator caused the Summary Notice of the Settlement to be published in the national edition of *Investor's Business Daily*.  *Id*. at ¶8.

Lead Counsel and the Claims Administrator continue to provide notice to the Class.   In accordance with the Preliminary Approval Order, Lead Counsel will file a final affidavit attesting to the proper mailing and publishing of notice of the settlement.  Preliminary Approval Order at ¶9.

The last day to file objections to any aspect of the Settlement is July 5, 2016.  As of June 20, 2016, neither Lead Counsel nor the Claims Administrator have received any objection to the Settlement or the Plan of Allocation.  Baldwin Decl. at ¶12. While one Settlement Class Member requested exclusion from the Settlement, he did so because he does not have a recognized claim under the Plan of Allocation.

## ARGUMENT

### I.       STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation.  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *Officers for Justice*, 688 F.2d at 625).

6

"[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In approving a proposed settlement of a class action under Rule 23(e), the court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *7 (N.D. Cal. Feb. 2, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). The Ninth Circuit has provided a list of factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

Therefore, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi*, 8 F.3d at 1375. This ultimate decision is in the "sound discretion of the district courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). A presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arms'-length negotiations; and (3) investigation is sufficient to allow counsel and the court to act intelligently. *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *11-*12 (C.D. Cal. June 10, 2005) (citing *Linney v. Ala. Cellular P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 243000, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)). Therefore, in exercising its discretion, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, 688 F.2d at 625. As explained below and in the Porritt Declaration (¶¶50-71), the application of these criteria to the Settlement supports its approval by the Court.

Moreover, in reviewing this Settlement under Rule 23, the Court should not substitute its business judgment for that of counsel who litigated the case. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Rather, the settlement should be approved if it is within a "range of reasonableness." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Thus "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also Nat'l Rural*, 221 F.R.D. at 528. The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arms'-length negotiations, including two mediations under the Honorable Layn R. Phillips (ret.). *See Hughes v. Microsoft Corp.*, No. 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21, 2001) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378(9th Cir. 1995) (finding mediator's involvement supports settlement approval). Finally, it is the considered judgment of counsel for the parties that this Settlement is a fair, reasonable, and adequate resolution of the litigation. *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21.

## II.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### A.    The Parties Were Able To Assess The Strengths And Weaknesses Of Their Cases

The stage of the proceedings and the amount of information available to both of the parties to assess the strength and weaknesses of their cases is one of the factors which courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 459; *Lundell v. Dell, Inc.*, No. 05-3970, 2006 U.S. Dist. LEXIS 90990, at *9 (N.D. Cal. Dec. 4, 2006).

Here, Plaintiffs' Counsel conducted an extensive investigation, including the review of approximately 16,000 pages of written discovery and document production, obtained and reviewed the

extensive record of public documents, thoroughly explored each side's claims and defenses, and participated in mediation presided over by the Honorable Layn R. Phillips (ret.) on two separate occasions.  The mediation sessions involved extensive briefing regarding the merits of the Action.  As a result, Plaintiffs' Counsel had a comprehensive understanding of the strengths and weaknesses of the case and sufficient information to make an informed decision regarding the fairness of the Settlement before presenting it to the Court.  *See Mego*, 213 F.3d at 458.

## B.   The Settlement Appropriately Balances The Risks Of Litigation And The Benefit To The Class Of A Certain Recovery

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Class members and the immediacy and certainty of a substantial recovery.  *Mego Fin.*, 213 F.3d at 458; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 617.  In other words:

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Nat'l Rural*, 221 F.R.D. at 526; *see also Lundell*, 2006 U.S. Dist. LEXIS 90990, at *9-*10.

In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain."  *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977).  Here, a balance of these factors weighs heavily in support of approval of the Settlement and unquestionably outweighs the possibility that the Class would receive no recovery at all.

### 1.   Continued Litigation Posed Substantial Risks In Establishing Liability

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural.*, 221 F.R.D. at 526. Although progress was made in litigating this case when the parties reached the Settlement, including

written discovery and document production, substantial work remained.  First, the class had not been certified, and certification was not a foregone conclusion. The risk of non-certification supports the Settlement.  *See Glass v. UBS Fin. Servs.*, No. 06-4068, 2007 U.S. Dist. LEXIS 8476, at *11-*12 (N.D. Cal. Jan. 26, 2007).

Further, although fact discovery had started and was on-going, the expert discovery process would take several additional months to complete, including exchange of reports, depositions and foreseeable *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993), motions. After completion of all discovery, summary judgment motions would be expected.  If the Action went to trial, the parties would then prepare a pre-trial order, propose jury instructions, and file and argue motions *in limine*. *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *24.   The parties would expend significant time preparing this case for a lengthy and complicated trial.

Plaintiffs believe that the case has merit and that they have evidence to establish Defendants' liability. Nevertheless, Plaintiffs recognize that, were they to continue prosecution of this action, they would face substantial risks. For their part, Defendants have denied the material allegations of the Complaint and have vigorously asserted that Violin shareholders have not sustained any damages as a result of the alleged misconduct. In view of these factors, without a settlement, Plaintiffs and the Settlement Class face a very real risk in this case that they could recover far less than the Settlement amount—or even nothing—without the Settlement. In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this case were not resolved at this time. Thus, the Settlement results in significant and immediate recovery, without any further risk, expense and delay that continued litigation would entail and consideration of the risk, expense, complexity and likely duration of this Action supports approval of the Settlement.

### 2.      Continued Litigation Posed Substantial Risks In Proving Damages

Plaintiffs' Counsel are mindful that if they were able to overcome the obstacles to establishing liability at trial, they would still face the additional risks of proving damages.  Plaintiffs' Counsel believe that, if they prevailed on the liability issue at trial, they would be able to establish damages in

10

the amount estimated by Plaintiffs' damages expert.  However, Plaintiffs' Counsel are mindful of Defendants' arguments challenging Plaintiff's claims throughout the litigation, as well as the amount of damages.

Expert testimony is necessary in order to establish the amount – and, indeed, the existence – of actual damages.  *See, e.g., In re Novatel Wireless Secs. Litig.,* No. 08cv1689, 2013 U.S. Dist. LEXIS 16986, *7-*8 (S.D. Cal. Feb. 7, 2013). Such an expert evaluation is based not only on stock price history but on other more elusive factors including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and many other variables.  At trial, Plaintiffs would likely have faced a motion *in limine* by Defendants to preclude Plaintiffs' damage expert's testimony under *Daubert*, and risked a decision that the expert's valuation model might not be admissible in evidence.  *See In re Novatel,* No. 08-1689, 2013 U.S. Dist. LEXIS 16986, at *12-*15 (ruling inadmissible the plaintiffs' expert testimony concerning damages).

If Plaintiffs survived the *Daubert* motion, the damage valuations of Plaintiffs' and Defendants' experts would vary substantially.  In the "battle of experts," it is impossible to predict with any certainty which arguments would find favor with the jury.  *See In re Warner Commc'ns Sec. Litigation*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors such as general market conditions").  Thus, even if Plaintiffs prevailed on the issue of liability, significant additional risks would remain in establishing the existence of damages.[2]

Accordingly, although Plaintiffs' Counsel believe that the case is meritorious, their experience

---

[2]  Moreover, even if Plaintiffs prevailed with the jury the Class would likely face the ongoing uncertainty and risks from a motion for judgment notwithstanding the verdict and an appeal.  *See Glass,* 2007 U.S. Dist. LEXIS 8476, *11-*12; *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal an $81 million jury verdict and dismissing securities action with prejudice); *In re Apple Computer Sec. Litig.*, No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (district court overturned jury verdict for damages exceeding $100 million).

has taught them how the risks discussed above can render the outcome of a trial extremely uncertain. *See In re Heritage*, 2005 U.S. Dist. LEXIS 13555 at *25 ("Settlement is favorable because "while Plaintiffs are confident of the strength of their case, it is imprudent to presume ultimate success at trial and thereafter."); *In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings").

### 3. Collectability Risks to the Class

Regardless of the amount of damages that might be awarded at trial and maintained through subsequent appeals, there was a substantial risk that Plaintiffs and the Class would be unable to collect more than a fraction of any such damages award from Defendants.  Porritt Decl. at ¶¶61-64. While Violin was and remains a going concern, it was under significant pressure to generate capital and/or raise financing. *Id.* Any recovery in this Action must come from Defendants or from any available insurance coverage. *Id.* There is little reason to believe that Defendants themselves would be able to satisfy more than a small portion (if that) of any substantial monetary judgment rendered against them. Further, Defendants only had a limited amount of insurance coverage potentially available to satisfy any judgments against them; that amount had been reduced over the course of the litigation through the payment of the fees and expenses of Defendants' attorneys, and would have been further reduced if the Action had proceeded to trial and through any inevitable subsequent appeals. Porritt Decl. at ¶63. Thus, in light of the limited amount of insurance coverage available to Defendants and the financial situation of Defendants themselves, it is highly unlikely that Plaintiffs would have ultimately been able to recover significantly more in damages from the Defendants and their insurers than the $7.5 million recovery for the Class achieved in the Settlement. *Id.* This issue contributes heavily to the fairness and adequacy of the proposed Settlement.  *See, e.g., In re Qwest Commc'ns. Sec. Litig.,* No. 01-01451, 2006 U.S. Dist. LEXIS 71039, at *19 (D. Colo. Sept. 28, 2006) (the potential inability to collect a damages award from a corporation weighs in favor of approval of settlement).  Therefore, careful

12

consideration of the above risks supports approval of the Settlement as fair, adequate, and reasonable.

**4.      Balancing The Certainty Of An Immediate Recovery Against The Expense And Likely Duration Of Protracted Litigation Favors Settlement**

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether the proposed Settlement is fair, adequate, and reasonable.  *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *27 ("Settlement of this case has distinct advantages over the speculative nature of litigating this case to a verdict."); *see also Girsh*, 521 F.2d at 157.  Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626.  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural*, 221 F.R.D. at 526.

Approval of the Settlement will mean a present recovery for eligible claimants.  If not for this Settlement, there would have been additional formal discovery, class certification briefing and summary judgment, the outcome of which is far from certain. Therefore, delay, not just at the trial stage, but through post-trial motions and the appellate process as well, could force Class members to wait many more years for any recovery, further reducing its value.  *See Omnivision*, 559 F. Supp. 2d at 1042 (recognizing the delay and risk inherent in an appeal by defendants and "an immediate and certain award" supports approval of a settlement versus the risk of receiving nothing from continued litigation).  Furthermore, the Class here faced a real risk regarding the collectability of any judgment. Accordingly, settlement of this litigation will ensure a recovery, eliminating the risk of no recovery at all.  The Settlement is, therefore, in the best interest of the Class.

As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes."  *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they

13

proceeded with litigation . . . ." *Id.*; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 19 (N.D. Cal. 1980) ("[a]s a quid pro quo for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands.").  Accordingly, the fact that the Class potentially could have achieved a greater recovery after trial does not preclude the Court from finding that the Settlement is within a "range of reasonableness" that is appropriate for approval.  *See, e.g., Warner Commc'ns*, 618 F. Supp. at 745.

### C.   The Settlement Amount Supports Approval Of The Settlement

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.  However, in balancing, a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural*, 221 F.R.D. at 526.  Balanced against all of the risks outlined above and in the Porritt Declaration (¶¶53-67), Plaintiffs have recovered a $7,500,000 cash settlement plus interest.  Plaintiffs' expert estimated potential recoverable damages for the Class at approximately $50 million. The Settlement, therefore, represents almost 15% of the total damages that their expert estimated could have been recovered if Plaintiffs were completely successful on each and every issue of liability and damages in the Action.  This is well above the median settlements between 1996 and 2015. Between January 1996 and December 2014, the median settlement value of securities class actions as a percentage of estimated investor losses was 13.3% for losses between $20 and $50 million, and 3.0% for estimated losses between $50 and $75 million. *See* Dr. Laarni T. Bulan, Ellen M. Ryan, and Dr. Laura E. Simmons, *Securities Class Action Settlements— 2015 Review and Analysis*, Cornerstone Research, 2016, page 5 fig. 4. For 2015, the median settlement value was 6.3% for estimated losses between $20 and $50 million, and 3.6% for estimated losses between $50 and $75. *Id.* While "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *Officers*

14

*for Justice*, 688 F.2d at 628,[3] the percentage recovery is within the range of settlements that have received approval by the courts. *See, e.g.*, *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 U.S. Dist. LEXIS 17196, \*37-38 (N.D. Cal. Feb. 11, 2016) (approving settlement representing approximately 14% of likely recoverable damages); *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at \*19 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing 3.8% of plaintiffs' estimated damages).

However, in securities actions, following the verdict on liability, the practice is for a claims administrator to require each class member to file a claim and subject himself to potential attack on issues such as reliance, before the total amount of Defendants' actual liability is determined. Therefore, the $50 million figure arrived at by Plaintiffs' expert not only assumes complete success on all issues of liability and damages, but also assumes that all members of the Class who can make a claim for payment will claim.  That, however, is almost never the case.

In addition, Plaintiffs' Counsel is cognizant of the fact that assuming success on all issues of liability and damages would be imprudent.  Accordingly, the "dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989).  Thus, the arguable possibility that the Class "might have received more if the case had been fully litigated [is] no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992); *see also In re Synthroid Mktg. Litig*, 264 F.3d 712, 716 (7th Cir. 2001) (affirming settlement over objection that "the settlement could have been larger" where the plaintiffs "would have had a headache trying to get any judgment on the merits").  If this Action was fully litigated, Class members might have received substantially less than the proposed Settlement, or, possibly, nothing at all.  *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).  Plaintiffs' Counsel, as a fiduciary to the

---

[3] *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth of a single percent of the potential recovery")

1  Class, must always be mindful of that possibility in considering whether or not to accept a settlement

2  and so too should the Court in considering it approval.

3  **D.**    **The Recommendation Of Experienced Counsel Heavily Favors Approval**

4     **Of The Settlement**

5     Highly experienced counsel, negotiating at arms'-length, have weighed the factors discussed

6  above and endorse the Settlement.  "Great weight is accorded to the recommendation of counsel, who

7  are most closely acquainted with the facts of the underlying litigation." *Adoma v. Univ. of Phoenix,*

8  *Inc.*, No. 10-0059, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012); *see also Ellis*, 87

9  F.R.D. at 18. In approving a settlement, courts often focus on the "negotiating process by which the

10  settlement was reached."  *Warner Commc'ns.*, 618 F. Supp. at 741.  Here, the parties engaged in

11  arms'-length negotiations, including intensive mediation sessions, before Settlement was ultimately

12  reached. "[T]he fact that the settlement agreement was reached in arm's length negotiations . . .

13  create[s] a presumption that the agreement is fair."  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d

14  1166, 1171 (S.D. Cal. 2007).

15     This Action has been litigated and settled by experienced and competent counsel on both sides

16  of the case.  The law firms that represented the Class are well known for their experience and success

17  in complex and class action litigation.  That such qualified and well-informed counsel endorse the

18  Settlement as being fair, reasonable and adequate to the Class heavily favors this Court's approval of

19  the Settlement.

20  **E.**    **Reaction Of The Class Supports Approval Of The Settlement**

21     The absence of a large number of objectors to a proposed class action settlement raises a strong

22  presumption that the terms of a proposed class settlement action are favorable to the class members.

23  *See In re Skilled Healthcare Group, Inc.,* No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at *11 (C.D.

24  Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a de minimus

25  objection as ratification of the settlement terms by the class."); *see also Heritage Bond Litig.*, 2005

26  U.S. Dist. LEXIS 13555, at *34; *Nat'l Rural*, 221 F.R.D. at 528.   The Claims Administrator

27  disseminated 9,655 Notice Packets to potential Class members; published the Summary Notice in the

28

16

national edition of *Investor's Business Daily*; and has been administrating a website and TFPS to field Violin shareholder questions.  Baldwin Decl. at ¶¶7, 9-10.  As of June 20, 2016, neither Lead Counsel nor the Claims Administrator have received any objections to the settlement.  Baldwin Decl. at ¶12.

Additionally, as of June 20, 2016, Lead Counsel has received only one request for exclusion from the Settlement.  The exclusion was submitted on or about May 17, 2016 to the Claims Administrator.  A copy of the exclusion is attached to the Baldwin Declaration as Exhibit E.  According to the exclusion, the claimant is requesting exclusion due to the fact that he "had 0 (zero) shares at the close of trading on November 21, 2013."  Baldwin Decl., Exhibit E.  Pursuant to the proposed Plan of Allocation, the claimant's recognized loss is $0 in light of the fact that he sold his Violin common stock before the corrective disclosure was issued on November 21, 2013.  This result comports with the Securities Act of 1933 and principles pertaining to loss causation.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005); *In re Velti PLC Sec., Litig.*, No. 13-CV-03889-WHO, 2015 U.S. Dist. LEXIS 135004, *84-86 (N.D. Cal. Oct. 1, 2015) (Section 11 claim precluded because plaintiff sold before the corrective disclosure).  Accordingly, the claimant's ultimate recovery would be the same whether he joined the Settlement or excluded himself from it.

The time period for objecting to the Settlement expires on July 5, 2016.  Lead Counsel will file an updated affidavit as to notice procedures and objections on July 19, 2016, in accordance with the Preliminary Approval Order.

**III.    THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND SHOULD BE APPROVED BY THE COURT**

Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Omnivision Tech.*, 559 F. Supp. 2d at 1045.  "However, an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."  *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *38.  There is no requirement that a settlement must

17

benefit all class members equally.  *See Mego*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery). These decisions acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into account the various disclosures during the Class Period and establishing a claim value based on the market's reaction to each new piece of information.

In order to develop a fair distribution plan, Lead Counsel developed the Plan of Allocation based on the damages analysis and distribution of estimated damages rendered by Plaintiffs' damages expert earlier in the litigation.  This analysis was, at the time the Settlement was reached, the best estimate of damages that Plaintiffs had and is still the analysis that Plaintiffs would likely have presented to the trier of fact.

The Plan of Allocation, of course, like Plaintiffs' estimate of Class-wide damages itself, assumes complete success on all aspects of liability and damages at trial and post-trial appeals.  Thus, the Plan of Allocation credits all Class members with the best possible result they could have achieved based on the number of Violin shares they purchased and the timing of their purchases and sales of Violin securities. Shaping each class member's recovery around these factors is only fair.  *Skilled Healthcare,* 2011 U.S. Dist. LEXIS 10139 at *12.

The Plan of Allocation, in full and complete detail, was included in the Notice Packet mailed to Class members and, as of June 20, 2016, no one has objected to it.  Baldwin Decl. at ¶12. Based upon the foregoing, Plaintiffs and Plaintiffs' Counsel submit that the Plan of Allocation will equitably apportion the net Settlement proceeds among all eligible Class members using the principles set forth in the case law cited above, and should be approved.

## IV.    THE COURT HAS ALREADY CERTIFIED THE SETTLEMENT CLASS UNDER FED. R. CIV. P. 23

The Court already granted certification of the Class for settlement purposes.  *See* Preliminary Approval Order at ¶4.  Further, the Court already approved Lead Plaintiffs Ali Shehk and Alan

18

Richards as Class Representatives and Levi & Korsinsky LLP and Kaplan Fox & Kilsheimer LLP as Class Counsel. *Id.* at ¶5. Given the absence of any objections to the Settlement, the Court should affirm its decision to grant class certification.

Class certification is appropriate here because, as set forth below, all of the requirements of Rule 23 are easily met.

### A.    The Class Is Sufficiently Numerous

Rule 23(a) first requires that the proposed class be so numerous that joinder of all members is difficult or impracticable. Fed. R. Civ. P. 23(a)(1). Here, joinder is certainly impracticable. *See In re THQ Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *9-*10 (C.D. Cal. Mar. 22, 2002). While the precise number of Violin shareholders is unknown, the number certainly exceeds any number considered practical for joinder. As alleged in the Complaint, upon completion of the IPO Violin had approximately 81 million shares of common stock outstanding. Indeed, courts routinely hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts. *See In re Applied Micro Circuits Corp. Sec. Litig.*, No. 01-cv-0649 (KAJB), 2003 WL 25419526, at *8 (S.D. Cal. July 15, 2003) (finding numerosity where the company issued millions of shares and the class is presumed to have thousands of members). From this information, one may conclude that there are likely thousands of members in the Settlement Class. The threshold for a presumption of impracticability is thus easily met. *See Hanlon*, 150 F.3d at 1019.

### B.    Common Questions Of Law Or Fact Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the [members of the] class." Fed. R. Civ. P. 23(a)(2). It is well established that the commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law. *See Rodriguez v. Hayes,* 591 F.3d 1105, 1122 (9th Cir. 2010); *Hanlon*, 150 F.3d at 1019-1020. Accordingly, common questions of law and fact exist in this Action such that certification as a class action is appropriate. The common questions of law and fact here are overwhelming and include:

> a)    Whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

19

b)      Whether Defendants made material misrepresentations and omissions concerning the Company's sales to the federal government and the professional background of the Company's former chief executive officer, Donald G. Basile;

c)      Whether the documents, press releases and public statements made, authorized and/or approved by Defendants contained material misrepresentations or omitted material information concerning the business and finances of Violin; and

d)      Whether the Settlement Class Members have sustained damages and, if so, the appropriate measure thereof.

## C.    Plaintiffs' Claims Are Typical Of Those Of The Class

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). As Plaintiffs' claims arise from the same course of conduct and are predicated on the same legal theories as the claims of all other Class members, these claims easily satisfy the typicality requirement of Rule 23(a).

## D.    Plaintiffs Are Adequate Representatives Of The Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The factors relevant to a determination of adequacy are: (1) the absence of potential conflicts between the named plaintiffs and their counsel with other class members; and (2) that counsel chosen by the representative parties is qualified, experienced and able with the named plaintiffs to vigorously conduct the litigation. *See Hanlon*, 150 F.3d at 1020.

There are no apparent conflicts of interest between the Lead Plaintiffs and the absent Settlement Class Members. Indeed, Lead Plaintiffs have been committed to the vigorous prosecution of this action from the outset and have reached a resolution that they believe is in the best interests of the Settlement Class. Lead Plaintiffs have shown that they are more than adequate representatives.

20

1   Moreover, the Court previously determined that Lead Counsel, Levi & Korsinsky LLP and Kaplan

2   Fox & Kilsheimer LLP, are qualified to represent the Settlement Class.

3                    **E.       The Requirements Of Rule 23(b)(3) Are Also Satisfied**

4          Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a),

5   common questions of law or fact predominate over any individual questions and a class action is

6   superior to other available means of adjudication.  *Amchem*, 521 U.S. at 591-94.  The Action easily

7   meets Rule 23(b)(3)'s requirements. "Predominance is a test readily met in certain cases alleging

8   consumer or securities fraud or violations of the antitrust laws."  *Amchem*, 521 U.S. at 625.  In

9   analyzing whether common questions predominate, the Court must evaluate whether proving the

10  elements of the Plaintiffs' claims can be done through common questions of fact or law, or whether the

11  proof will be overwhelmed with individual issues.  *See Hanlon*, 150 F.3d at 1022.

12         Courts generally find that securities fraud class actions easily satisfy the predominance

13  requirement.  *See THQ*, 2002 U.S. Dist. LEXIS 7753, at *30 ("Plaintiffs' claim – which is based on a

14  series of misrepresentations and market manipulations – clearly satisfies the requirement that common

15  questions predominate over those affecting individual members.") (citing *In re United Energy Corp.*

16  *Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988)).  In this

17  case, the common questions of law and fact identified above predominate because the proof for the

18  claims of misrepresentation, materiality, reliance and Defendants' scienter are all based on a common

19  nucleus of fact and common course of conduct.

20         The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself.  As

21  explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district

22  court need not inquire whether the case, if tried, would present intractable management problems, *see*

23  Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial."  521 U.S. at 620.  Thus, any

24  manageability problems that may have existed here - and Plaintiffs know of none - are eliminated by

25  the Settlement.  In any event, given the alternatives, e.g., unnecessarily burdening the judiciary with

26  numerous actions involving relatively small amounts of damages, which "would prove uneconomic for

27  potential plaintiffs" where "litigation costs would dwarf potential recovery," resolving this case on a

28

21

1    class-wide basis is clearly preferable. *Hanlon*, 150 F.3d at 1023. Accordingly, it is appropriate to

2    certify this litigation as a class action.

3          **V.**         **THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS**

4       Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class

5    members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The

6    notice procedure sought to reach the greatest number of Class members possible. Pursuant to the

7    Preliminary Approval Order, the Claims Administrator disseminated 9,655 Notice Packets to potential

8    Class members and nominees. Baldwin Decl. at ¶7. In addition, the Claims Administrator published

9    the Summary Notice in the national edition of *Investor's Business Daily* on April 7, 2016 and, since

10   that same date, has been administrating a 24-hour/7-days-per-week website and TFPS to field Violin

11   shareholder questions. Baldwin Decl. at ¶¶9-10. As of June 20, 2016, neither Lead Counsel nor the

12   Claims Administrator have received any objections. Baldwin Decl. at ¶12. This notice program was

13   clearly "the best notice practicable under the circumstances including individual notice to all members

14   who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173

15   (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process. *See, e.g.*,

16   *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-47 (10th Cir.

17   2005) (finding notice program akin to the instant one satisfied due process); *Mullane v. Cent. Hanover*

18   *Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice need only be "reasonably calculated, under all the

19   circumstances, to apprise interested parties of the pendency of the action and afford them an

20   opportunity to present their objections.").

21       The Notice was also clearly sufficient with respect to its content. *See Maher v. Zapata Corp.*,

22   714 F.2d 436, 451 (5th Cir. 1983) (notice must "fairly apprise the prospective members of the class of

23   the terms of the proposed settlement and of the options that are open to them . . . ."). Courts have

24   repeatedly sustained notices in cases where the notice included only very general information. *See,*

25   *e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361-62 (9th Cir. 1979); *Mendoza*

26   *v. United States*, 623 F.2d 1338, 1351-52 (9th Cir. 1980).

27

28

Here, the Notice detailed the Settlement and the releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the maximum amount that Plaintiffs' Counsel would seek in attorneys' fees and reimbursement of expenses for prosecuting the Action; described Class members' right to request exclusion from the Class or appear through personal counsel of their choosing and/or to object to the Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of expenses, the deadlines for asserting these rights and procedures for doing so; and provided addresses, a toll-free telephone number and a website where Class members could obtain additional information. The Notice also contained a statement of the average per share amount that the Settlement represents to the total number of damaged shares in the Class; a statement that there is no agreement on the amount of damages; identification of the attorneys for the class; and the reasons for the Settlement. Accordingly, the notice to the Class met all requirements of Rule 23(c) and (e), 15 U.S.C. §78u-4(a)(7) of the PSLRA, and due process.

## **CONCLUSION**

For the reasons set forth above and in the Porritt Declaration, Plaintiffs and Plaintiffs' Counsel submit that: the Settlement is fair, reasonable and adequate and meets the most stringent requirements for Court approval under Rule 23(e), and it should be approved by the Court; the Plan of Allocation is fair and equitable and should be approved; and the Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3), and it should receive final certification.

DATED: June 21, 2016

Respectfully submitted,

By:    /s/ Nicholas I. Porritt

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eduard Korsinsky
Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Telephone:  202-524-4290
Facsimile:   202-333-2121

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707

Frederic S. Fox
Jeffrey P. Campisi
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714

*Attorneys for Lead Plaintiffs Ali Shehk and Alan Richards, and the Settlement Class*

MPA ISO PLAINTIFFS' MOTION FOR FINAL APPROVAL
Case No. 13-CV-05486-YGR